**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 14-cv-03078-REB

JULIA A. MCKEE,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER AFFIRMING COMMISSIONER

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[1] filed January 14, 2014, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

    Plaintiff alleges that she is disabled as a result of degenerative joint disease, osteoarthritis of the knees, and fibromyalgia. After her application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. This hearing was held on July 10, 2013. At the time of this hearing, plaintiff was 60 years old. She has a high school education and past relevant work experience

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

as an office manager. She has not engaged in substantial gainful activity since January 21, 2012, her alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits. Although the evidence established that plaintiff suffered from severe impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations.[2] The ALJ found plaintiff had the residual functional capacity to perform a reduced range of light, semi-skilled work with significant postural and environmental restrictions and the ability to stand or walk as needed. As this residual functional capacity was consistent with the all the demands of plaintiff's past relevant work, the ALJ found her not disabled at step four of the sequential evaluation. Alternatively, the ALJ also concluded at step five that there were other jobs existing in substantial numbers in the national and local economies which were compatible with plaintiff's residual functional capacity. Plaintiff appealed this decision to the Appeals Council. The Council affirmed. Plaintiff then filed this action in federal court.

## II. STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the

---

[2] Other alleged impairments were found to be non-severe, a finding which plaintiff does not challenge in this appeal.

impairments in making a disability determination." ***Campbell v. Bowen***, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  ***See Kelley v. Chater,*** 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

    1.    The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

    2.    The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

    3.    The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

    4.    If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

    5.    If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(b)-(f).  ***See also Williams v. Bowen*** 844 F.2d 748, 750-52 (10th

Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III. LEGAL ANALYSIS

Although plaintiff presents five separate assignments of error in this appeal, all relate to the ALJ's decision to afford little weight to the opinion of plaintiff's treating source, Dr. Hollis Julson, plaintiff's primary care physician. Dr. Julson completed two residual functional capacity assessments on plaintiff's behalf in December 2012, in which he opined that plaintiff had significant physical, nonexertional, and environmental restrictions that combined limited her to less than sedentary work. (Tr. 833-837, 838-845.) The ALJ gave this opinion "little weight," finding it unsupported by the objective medical findings, Dr. Julson's own treatment records, and the record as a whole. (Tr. 17.) Instead, the ALJ relied principally on the opinion of a consultative examiner, Dr. Thurmon Hodge, in finding that plaintiff had the residual functional capacity for a limited range of semi-skilled light work.

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). A treating source opinion cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision. *Watkins*, 350 F.3d at 1301. Good cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987). Because the ALJ here articulated good reasons specifically tied to the evidence of record for the weight he assigned Dr. Julson's opinion, I affirm.

It is true, as plaintiff notes, that "a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." **Social Security Ruling** 96-2p, 1996 WL 374188 at *4 (SSA July 2, 1996). Nevertheless, and contrary to the tacit assumption of plaintiff's argument, those same considerations do not lose all relevance thereafter. To the contrary, even after the ALJ concludes that a treating source opinion is not entitled to controlling weight, he still must consider what weight it deserves on light of "all of the factors provided in 20 CFR 404.1527[.]" **Social Security Ruling** 96-2p, 1996 WL 374188 at *4. ***See also Langley v. Barnhart***, 373 F.3d 1116, 1119 (10th Cir. 2004). Among these relevant considerations are whether the opinion is supported by medical signs and laboratory findings, 20 C.F.R. § 404.1527(c)(3), and whether it is consistent with the record as a whole, *id.* § 404.1527(c)(4). These are precisely the factors on which the ALJ here relied.

His analysis of the evidence in support of his conclusion that Dr. Julson's opinion was entitled to "little weight" cannot seriously be faulted.[3] Earlier in his residual functional capacity assessment, in the context of assessing plaintiff's credibility, the ALJ recounted in detail the relatively mild and minimal findings of various physical

---

[3] Contrary to plaintiff's argument, the Tenth Circuit has not held that an ALJ's decision to afford a medical source opinion "little weight" necessarily constitutes an outright rejection of that source's opinion. That equation happened to be justified in ***Chapo v. Astrue***, 682 F.3d 1285 (10th Cir. 2012), because the ALJ there failed to adopt any of the medical source's otherwise unopposed opinions. *See id.* at 1291. The court created no *per se* rule, however. The ALJ's use of that terminology in this case must be evaluated based on how he actually treated Dr. Julson's opinion.

6

examinations (by both Dr. Julson and other medical providers) during plaintiff's alleged period of disability, the conservative nature of plaintiff's treatment (including long periods in which she took no medications at all to treat her allegedly disabling impairments), and the significant physical activities in which plaintiff engaged despite her allegedly disabling impairments. The ALJ's analysis of this evidence was supported by a precise citation to and accurate recitation of the record. (Tr. 15-17.) That the ALJ did not again rehearse all this same evidence in connection with his later statement that the record as a whole did not support Dr. Julson's findings therefore was not mere "boilerplate."[4] The court is able to meaningfully review the ALJ's opinion without such redundancy, *see Wall v. Astrue*, 561 F.3d 1048, 1068 (10th Cir. 2009), and the conclusion is more than adequately supported by good cause and sufficient reasons.

Nor did the ALJ err in affording "great weight" to Dr. Hodge's opinion. (*See* Tr. 816-821.) The ALJ noted that Dr. Hodge's opinion was consistent with the record as a whole, including imaging test results and normal examination findings. (Tr. 17.) As noted above, the ALJ's thorough examination of the evidence of record belies any suggestion that this reason is simply a conclusion in the guise of a finding or mere boilerplate. *Cf. Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004).

Nor am I persuaded that the ALJ inappropriately expressed medical opinions by his more specific references to imaging and examination results. Dr. Hodge himself noted that plaintiff had normal range of motion with all exercises except squatting, as

---

[4] Plaintiff's citation to this court's decision in *Cira v. Colvin*, 67 F.Supp.3d 1206 (D. Colo. 2014), for this proposition is inapt. In that case, I took the ALJ to task for citing to lengthy exhibits within the administrative record without providing pinpoint references to assist in my review of the decision. *Id.* at 1210. The ALJ here did not contravene that directive, instead, providing specific page references to each of the exhibits he cited in support of his analysis.

well as normal gait and strength.  (*See* Tr. 819-820.)  The ALJ reasonably could conclude that these findings, replicated elsewhere in the treatment records, supported the limitations Dr. Hodge endorsed.  Although Dr. Hodge did not review the imaging studies to which the ALJ alluded, it is difficult to perceive error in the commonsense conclusion that the mild findings substantiated by these tests supported Dr. Hodge's opinion.[5]  To the extent there was any conceivable error in this regard, however, plaintiff does not suggest how these findings might support limitations more restrictive than those the ALJ ultimately imposed.  *See Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir.1988); *Zagorianakos v. Colvin*, 81 F.Supp.3d 1036, 1044 (D. Colo. 2015).

Plaintiff also complains that Dr. Hodge did not have adequate objective medical evidence available at the time of his examination, and therefore that the ALJ was obligated to recontact him for further explanation or reconsideration of his opinions. *See White v. Barnhart*, 287 F.3d 903, (10th Cir. 2001).  This objection is not well-taken.  Although Dr. Hodge noted that plaintiff's evaluation was "difficult" because "most of her symptoms depend on past medical history evaluations and none were provided"  (Tr. 820), he nevertheless ultimately was able to express a comprehensive opinion as to plaintiff's functional abilities.  Nowhere did he suggest that whatever difficulties were presented by the lack of past records compromised his examination of plaintiff or his ultimate conclusions as to her residual functional capacity.[6]

---

[5]  The ALJ discussed the findings of two imaging studies performed on plaintiff's right shoulder and lumbar spine in January and February 2012 (i.e., contemporaneous with her alleged date of onset). (Tr. 15.)  These showed mild degenerative joint disease of the shoulder (Tr. 657) and mild intervertebral desiccation within the lower lumbar spine without disc herniation or neural foraminal narrowing (Tr. 923).

[6]  The evidence which plaintiff claims was not provided to Dr. Hodge consists of the results of a knee MRI (Tr. 920-921), and diagnoses of cubital tunnel syndrome and humeral lateral epicondylitis (i.e., "tennis elbow") (Tr. 925; *see also* Tr. 926-928 (results of nerve conduction studies)).  Initially, I note that the ALJ specifically found that cubital tunnel syndrome and humeral lateral epicondylitis were not severe impairments at step two of the sequential evaluation (Tr. 13), a finding plaintiff does not challenge on

Moreover, the ALJ himself incorporated these considerations into his ultimate determination by finding plaintiff's residual functional capacity more restricted than Dr. Hodge suggested.  (Tr. 17.)  Thus, for example, although Dr. Hodge found no evidence to support plaintiff's claims of fibromyalgia (Tr. 820), the ALJ concluded that fibromyalgia was a severe impairment (Tr. 13), recounted the evidence supporting plaintiff's claims of limitations associated with fibromyalgia (Tr. 16), and accounted for the limitations imposed by that condition which were reasonably supported by the evidence in his ultimate residual functional capacity assessment (Tr. 17).

Partly as a result of this determination, the ALJ's residual functional capacity assessment did not correspond directly to Dr. Hodge's opinion.  That circumstance does not suggest error, much less compel reversal.  Just as an ALJ "is not required to adopt or rely on any medical source opinion in making [his] residual functional capacity assessment," **Moses v. Astrue**, 2012 WL 1326672 at *4 (D. Colo April 17, 2012), neither is he obligated to include in his residual functional capacity assessment every limitation possibly suggested by a medical source, **Rex v. Colvin**, 26 F.Supp.3d 1058, 1063 (D. Colo. 2014).  **See also Howard v. Barhart**, 379 F.3d 945, 949 (10th Cir. 2004) (this circuit has "rejected [the] argument that there must be specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category").  Although the ALJ's determination must

---

appeal. In any event, the mere diagnosis of an impairment does not support a finding of disability. **See Coleman v. Chater**, 58 F.3d 577, 579 (10th Cir. 1995); **Bernal**, 851 F.2d at 301.  Even in the absence of formal diagnoses of these conditions, Dr. Hodge's actual examination addressed the relevant inquiry – what plaintiff was capable of doing despite her various alleged impairments, diagnosed or not.  **See Scull v. Apfel**, 2000 WL 1028250 at *2 (10th Cir. July 26, 2000) ("We have on a number of occasions recognized this dispositive gap between diagnostic evidence per se and the requisite showing of consequent impairment."); **Cooper v. Colvin**, 2013 WL 4097270 at *2 (N.D. Okla. Aug. 13, 2013) ("The focus of a disability determination is on the functional consequences of a condition, not the  mere diagnosis.").

be grounded in some medical evidence, **Rex**, 26 F.Supp.3d at 1063, residual functional capacity ultimately is an administrative determination reserved to the Commissioner, 20 C.F.R. § 404.1546; **Rutledge v. Apfel**, 230 F.3d 1172, 1175 (10th Cir. 2000), to be assessed "based on all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3), "including medical records, observations of treating physicians and others, and plaintiff's own description of [her] limitations," **Noble v. Callahan**, 978 F.Supp. 980, 987 (D. Kan. 1997).[7]

Ultimately, although the court agrees with plaintiff that the record in this case could be characterized as somewhat "mixed," that recognition affords her no ground for reversal. Conflicts in the evidence are for the ALJ to resolve. **See Reyes v. Bowen**, 845 F.2d 242, 245 (10th Cir. 1988); **Wade v. Colvin**, 26 F.Supp.3d 1073, 1082 (D. Colo. 2014). It is apparent that the ALJ fulfilled that obligation appropriately in this case. This court is not empowered to reweigh the evidence in the manner plaintiff here requests. **See Thompson v. Sullivan**, 987 F.2d at 1487; **Zagorianakos**, 81 F.Supp.3d at 1045.

## IV.  ORDERS

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

---

[7] For this same reason, I perceive no reversible error in the ALJ's limitation to occasional crouching despite Dr. Hodge's suggestion that plaintiff could not squat. Assuming *arguendo* that the two terms describe the same action, the ALJ was not required to adopt every limitation suggested by Dr. Hodge. Although the ALJ should have explained the reason this restriction was not adopted, **Social Security Ruling** 96-8p, 1996 WL 374184 at *7 (SSA July 2, 1996), plaintiff neither argues nor demonstrates that the ultimate disability determination would have been different had such a limitation been included in her residual functional capacity, **Bernal**, 851 F.2d at 303; **Zagorianakos**, 81 F.Supp.3d at 1044.

Dated March 29, 2016, at Denver, Colorado.

                            **BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge